UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                                                20-cr-301 (PKC)

       -against-                                                     OPINION
                                                                             AND ORDER

HUMBERTO RODRIGUEZ, ANDRES BELLO
and SHARRONE LEWIS,

                             Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendants Humberto Rodriguez, Andres Bello and Sharrone Lewis move to dismiss the Superseding Indictment in this case. They assert that the grand jury that returned the Superseding Indictment did not reflect a fair cross-section of the community as required by the Sixth Amendment to the United States Constitution and the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1861, et seq. (Docket # 131.) Specifically, they urge that Black and Hispanic individuals were unfairly underrepresented in the grand jury pool drawn for the Foley Square courthouses of this District, and that a statistical analysis set forth in the Declaration of Jeffrey Martin, a statistician, makes out a prima facie case that this underrepresentation was systematic.

        Because defendants have not made out a prima facie case of systematic underrepresentation of Black and Hispanic persons from the grand jury pool, defendants' motion to dismiss will be denied.

BACKGROUND.

    A. Procedural History.

On June 15, 2020, a grand jury sitting in White Plains returned a two-count Indictment that charged defendants Rodriguez, Bello and another defendant with participating in a cocaine-distribution conspiracy in violation of 21 U.S.C. §§ 846, 841(a)(1) and 941(b)(1)(B), and murder in violation of 21 U.S.C. § 924(j).  (Docket # 19.)  Defendants moved to dismiss the Indictment on grounds directed toward the composition of the White Plains grand jury.  (Docket # 83.)

On December 23, 2020, a grand jury sitting in Manhattan returned the S2 Superseding Indictment, which charged the movants and others with participating in a cocaine-distribution conspiracy in violation of 21 U.S.C. §§ 846, 841(a)(1) and 941(b)(1)(B), and murder in violation of 21 U.S.C. § 924(j).  (Docket # 88.)  The then-pending motion to dismiss directed to the composition of the White Plains grand jury was denied as moot.  (See 3/2/21 Tr. at 12.)

Defendant Humberto Rodriguez filed the present motion to dismiss, which was joined by defendants Bello and Lewis.  (Docket # 131, 134-35.)  It annexes the Declaration of Jeffrey Martin, dated March 6, 2021, who opines that the pool for grand jurors in the Foley Square Division of this District underrepresents Black and Hispanic persons in a statistically significant manner.  (Docket # 132-1.)  Specifically, Martin asserts that Black persons comprise an aggregate 21.19% of the population of the counties from which jurors are selected but are 16.08% of the persons in the Qualified Jury Wheel, while Hispanic persons constitute 28.44% of the population of the counties from which jurors are selected but are 19.41% of the Qualified Jury Wheel.  (Id. ¶¶ 23, 28, 33-34.)  Defendants urge that this disparity and its duration make out

a prima facie case for the systematic exclusion of Black and Hispanic persons from the grand jury that issued the Superseding Indictment.

> B. The District's Jury Plan.

The JSSA requires that "[e]ach United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors . . . ." 28 U.S.C. § 1863(a). In February 2009, this District adopted the "Amended Plan for the Random Selection of Grand and Petit Jurors in the United States District Court for the Southern District of New York" (the "Jury Plan").[1]

The District's pools for service as grand jurors and petit jurors are drawn from the voter-registration rolls of the eight counties that comprise this District. (Plan Art. III.A.) Potential jurors are designated into two, separate "Master Jury Wheels," one of which is used for the District's proceedings in Foley Square and one for those in White Plains.[2] (Plan Art. III.B, C.) "The Master Jury Wheels shall be emptied and refilled by not later than September 1 following the date of each Presidential Election." (Plan Art. III.B.)

The Clerk of Court draws names and addresses of potential jurors from the respective Master Wheels "[o]nce or twice each year, or more frequently, if necessary . . . ." (Plan Art. III.D.) Persons selected from the Master Wheels receive questionnaires as to their qualifications and availability. (Id.) Consistent with the JSSA's requirements, 28 U.S.C. § 1865(b), the Plan provides that:

> the Judges of the Court shall deem any person qualified to serve on grand and petit juries in the Court unless he or she:

---

[1] Available at https://www.nysd.uscourts.gov/sites/default/files/pdf/juryplan_feb_2009.pdf
[2] "The Master Wheel for the Manhattan courthouse shall include residents from five counties, consisting of New York, Bronx, Westchester, Putnam and Rockland; and the Master Wheel for the White Plains courthouse shall include residents from six counties, consisting of Westchester, Putnam, Rockland, Orange, Sullivan and Dutchess." (Plan. Art. III.C.)

>  (1) Is not a citizen of the United States eighteen years old who has resided for a period of one year within the judicial district;
>  (2) Is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form;
>  (3) Is unable to speak the English language;
>  (4) Is incapable, by reason of mental or physical infirmity, to render satisfactory jury service; or
>  (5) Has a charge pending for the commission of, or has been convicted in a State or Federal court, a crime punishable by imprisonment for more than one year and his civil rights have not been restored.

(Plan Art. VII.)

Certain persons are declared automatically exempt from jury service, including members of the armed forces and certain public officials. (Plan Art. V; 28 U.S.C. 1863(b)(6).) Other individuals falling within certain criteria (including persons older than 70, those providing active daily care to children younger than 12, and volunteer safety personnel, among others) may be excused or deferred upon request. (Plan Art. VI.)

Those persons who respond to the qualification questionnaires and are determined to be qualified to serve as jurors without exemptions are then assigned to separate "Qualified Jury Wheels" for the Foley Square and White Plains courthouses. (Plan Art. IV.A, B.) The Qualified Jury Wheels contain at least 500 names at all times. (Plan Art. IV.A.) Defendants urge that the composition of the Qualified Jury Wheel for the Foley Square Division of the District systematically underrepresent the relevant counties' overall population of Black and Hispanic persons, thereby violating the fair-cross section guarantees of the Sixth Amendment and the JSSA.

DISCUSSION.

    A.  <u>Legal Standard.</u>

"The Sixth Amendment guarantees a criminal defendant a jury selected from a fair cross section of the community." <u>United States v. Rioux</u>, 97 F.3d 648, 654 (2d Cir. 1996) (citing <u>Taylor v. Louisiana</u>, 419 U.S. 522, 530 (1975)). In order to make out a <u>prima</u> <u>facie</u> case that the Sixth Amendment's fair cross section requirement has been violated, a defendant must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979).

The JSSA similarly requires that a defendant "shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Under the JSSA, a defendant may "move to dismiss the indictment . . . against him on the ground of substantial failure to comply with the provisions of [the JSSA] in selecting the grand or petit jury." 28 U.S.C. § 1867(a). A defendant is entitled to present evidence at a hearing if the motion includes facts that would "'if true, constitute a substantial failure to comply' with the [JSSA]." <u>United States v. LaChance</u>, 788 F.2d 856, 870 (2d Cir. 1986) (quoting 28 U.S.C. § 1867(d)). A "technical" violation of the JSSA does not entitle a movant to a hearing or relief. <u>Id.</u>

The factors weighed under <u>Duren</u> also govern the analysis for a challenge brought under the JSSA. <u>Id.</u> at 864. Additionally, under the JSSA, "[w]hether a violation is 'substantial'

- 5 -

or merely 'technical' depends upon the nature and extent of its effect on the wheels and venire from which a defendant's grand jury was derived." Id. at 870.

Judge Caproni recently observed that "[i]n the past six months, a host of defendants in this district have filed motions" raising Sixth Amendment and JSSA challenges to the cross-section of the District's grand jury pool, and "[d]uring that same period, every court to rule on such a motion has rejected the Sixth Amendment and JSSA challenges to the SDNY Jury Plan." United States v. Neilly, 2021 WL 3913559, at *2 (S.D.N.Y. Sept. 1, 2021) (collecting cases). At least some of these motions were premised on the statistical information set forth in the declaration of Jeffrey Martin annexed by defendants in this case. See, e.g., United States v. Irizarry, 2021 WL 3855869 (S.D.N.Y. Aug. 27, 2021) (Vyskocil, J.); United States v. Lawrence, 2021 WL 3500838 (S.D.N.Y. Aug. 9, 2021) (Gardephe, J.); United States v. Suquilanda, 2021 WL 3500868 (S.D.N.Y. Aug. 9, 2021) (Marrero, J.).

> B. Defendants Have Not Made Out a Prima Facie Case of Systematic Exclusion under the Third Duren Prong.

On the first Duren prong, the parties do not dispute that Black and Hispanic persons are a "distinctive" group in the community. Defendants have therefore satisfied the first prong of Duren, 439 U.S. at 364. However, the parties dispute whether defendants have satisfied the second and third prongs of Duren.

The second Duren prong looks to whether the representation Black and Hispanic persons in a district's grand juries is fair and reasonable in relation to the number of such persons in the community. 439 U.S. at 364. The Martin Declaration states that Black persons constitute 21.19% of the relevant overall population but are 16.08% of the persons in the Qualified Jury Wheel, while Hispanic persons constitute 28.44% of the overall population but are 19.41% of the Qualified Jury Wheel. (Martin Dec. ¶¶ 33-34.)

In determining representativeness under prong two of Duren, courts generally weigh the "absolute disparity" in the composition of a jury pool. See Rioux, 97 F.3d at 655; see also Lawrence, 2021 WL 3500838, at *7 (collecting cases). "The absolute disparity method measures the difference between the group's representation in the general population and the group's representation in the qualified wheel." Rioux, 97 F.3d at 657. In terms of absolute disparity, Martin has identified a 5.11% underrepresentation of Black persons (16.08% subtracted from 21.19%) and a 9.03% underrepresentation of Hispanic persons (19.41% subtracted from 28.44%) in the Qualified Jury Wheel. (Def. Mem. at 7.)

As Judge Gardephe discussed in his detailed and thoughtful decision in Lawrence, courts have often struggled with "imperfect" statistical tests to determine disparities and adequate representation in juror pools. 2021 WL 3500838, at *7-9. The Second Circuit has indicated that absolute disparities of 3.6% and 4.7% raised "extremely close" issues under the Sixth Amendment's fair cross-section requirement. Id. at *8 (citing United States v. Biaggi, 909 F.2d 662, 678 (2d Cir. 1990)). Those disparities are smaller than the 5.11% and 9.03% disparities cited in defendants' motion. However, the Court need not decide the second Duren prong in order to deny defendants' motion, and it does not reach the issue of underrepresentation. See id. at *9; Neilly, 2021 WL 3913559, at *3 ("Because the Court determines that Defendant has failed to demonstrate that any underrepresentation is a result of systematic exclusion in the jury selection process, the Court need not determine whether Defendant has made a prima facie showing of underrepresentation.").

Under prong three of Duren, "[t]here is systematic exclusion when the underrepresentation is due to the system of jury selection itself, rather than external forces." Rioux, 97 F.3d at 658. "'To demonstrate systematic exclusion, the Defendant must isolate

specific flaws in the Jury Plan and then prove that those flaws are what caused the underrepresentation at issue.'" Neilly, 2021 WL 3913559, at *3 (quoting United States v. Tagliaferro, 2021 WL 1172502, at *3 (S.D.N.Y. Mar. 29, 2021) (Crotty, J.)). Statistics generally will not suffice to demonstrate systematic exclusion. Rioux, 97 F.3d at 658; see also Neilly, 2021 WL 3913559, at *3 ("Defendant's reliance on the statistical showing of underrepresentation alone is unpersuasive, as is Defendant's dependence on the supposed persistence of this underrepresentation over a decade-plus.").

"[S]ystematic exclusion does not occur simply because a facially neutral disqualification criterion disproportionately impacts a particular group." United States v. Barlow, 732 F. Supp. 2d 1, 40 (E.D.N.Y. 2010) (Bianco, J.). For instance, disqualifying or exempting jurors based on the inability to speak English "is unquestionably reasonable" even if it affects a distinctive group. Rioux, 97 F.3d at 659.

Defendants assert the existence of systematic exclusion in the pool of jurors in the Qualified Jury Wheel drawn for Foley Square because Black and Hispanic persons are underrepresented in the Qualified Jury Wheel, while White persons are overrepresented. (Def. Mem. at 9-13.)

Defendants urge that disparities noted in the Martin Declaration are alone sufficient to make a prima facie case for the systematic exclusion of Black and Hispanic persons based on these disparities and their increasing imbalance over an extended period of time. (Def. Mem. at 9.) Defendants note that in 2010, Hispanic persons were overrepresented by 0.29% in the Qualified Juror Wheel, a figure that has steadily changed to the 9.07% underrepresentation of Hispanic persons identified in 2019. (Def. Mem. at 9-10.) They urge that there can be no "benign" explanation for this increase. (Id.)

Defendants also point to asserted flaws in how the Jury Plan identifies potential jurors. They note that Martin's analysis identified 304,884 individuals who are excluded from the Master Jury Wheel for Foley Square because their voter status is designated as "inactive." (Id. at 16.) Defendants also point to Martin's conclusion that Putnam County "arbitrarily excluded" 3,333 potential jurors from the same Master Jury Wheel "due to a technical glitch." (Id. at 17.)

First, the defendants conflate the underrepresentation considered in Duren's second prong with the issue of systematic exclusion. Courts in this District have rejected the argument that the trend of underrepresentation of Hispanics in the Qualified Jury Wheel demonstrates prima facie evidence of systematic exclusion. See Neilly, 2021 WL 3913559, at *3; United States v. Middlebrooks, 2021 WL 2402162, at *3 (S.D.N.Y. June 10, 2021) (Berman, J.); Tagliaferro, 2021 WL 1172502, at *3 (underrepresentation alone does not demonstrate systematic exclusion). Rather, "[t]o demonstrate systematic exclusion, the Defendant must isolate specific flaws in the Jury Plan and then prove that those flaws are what caused the underrepresentation at issue." Id. Defendants' assertions about the disparity in the number of Hispanic persons including in the Qualified Jury Wheel may be some evidence going to the second Duren prong, but it does not make out a prima facie case of systematic exclusion.

Second, the purported flaws identified in the Jury Plan are facially neutral and based on external factors. They do not make out a prima facie case for systematic exclusion. The exclusion of inactive voters from the Qualified Jury Wheel is a facially neutral disqualification criterion based on external factors, such as whether the person has moved or has ceased active voting. See Neilly, 2021 WL 3913559, at *4 ("because the exclusion of inactive voters from the wheel is predicated on underlying factors, such as an individual's having moved,

this choice also does not result in systematic exclusion, and any underrepresentation on account of this choice is a result of external forces."); Middlebrooks, 2021 WL 2402162, at *3 ("Here again, the cause of exclusion is people moving, which courts have held 'is an external force.'") (citation omitted); United States v. Schulte, 2021 WL 1146094, at *8 (S.D.N.Y. Mar. 24, 2021) ("At bottom, the Court cannot charge the District's Jury Plan with a Sixth Amendment violation because of how often people move residences throughout the District.") (Crotty, J.).

On the issue of Putnam County residents, the Martin Declaration states: "3,333 persons from Putnam County had an alternate mailing address and whose address in the Master County Jury Wheel was unsuccessfully transferred." (Martin Dec. ¶ 67.) While this exclusion may have caused a slight imbalance in the geographical composition of the grand jury that issued the Superseding Indictment, neither defendants' memo nor the Martin Declaration have identified a resulting disparity among Black or Hispanic persons. Geographical imbalances have been held not be violative of the fair cross-section requirements of the Sixth Amendment or the JSSA absent evidence that a distinctive group has been systematically underrepresented as a result. See United States v. Orange, 447 F.3d 792, 801 (10th Cir. 2006). Moreover, a declaration submitted by the government in opposition concluded that the Putnam County error "would be expected to increase the percent African American and Hispanic in the qualified wheel. The actual impact of this clerical error on the absolute difference between the community and the master jury wheel was negligible, trivially increasing the percent African American and Hispanic on the master jury wheel by less than 0.005 percentage points." (Siskin Dec. ¶ 9.) Defendants have made no submission disputing that conclusion. The Court concludes that plaintiffs have not made out a prima facie case that the Putnam County error resulted in a systematic exclusion of Black or Hispanic jurors.

Other alleged deficiencies in the Jury Plan described in the Martin Declaration (but not mentioned in defendants' memorandum) do not individually or in combination with other facts make out a prima facie case of systematic exclusion for the reasons explained by Judge Crotty in Tagliaferro, 2021 WL 1172502, at *4.

C.  Dismissal Is Not Warranted Under the JSSA.

As noted, the Duren test also governs claims brought under the JSSA. LaChance, 788 F.2d at 864.  The JSSA also considers "[w]hether a violation is 'substantial' or merely 'technical'," an analysis that "depends upon the nature and extent of its effect on the wheels and venire from which a defendant's grand jury was derived." Id. at 860.

For the reasons largely explained, defendants' motion to dismiss based on a claimed violation of the JSSA will be denied.  Defendants have not demonstrated that the exclusion of inactive voters from the Qualified Jury Wheel amounts to a "substantial violation" of the JSSA.  The JSSA requires judicial districts to "specify whether the names of prospective jurors shall be selected from the voter registration lists or the lists of actual voters of the political subdivisions within the district or division." 28 U.S.C. § 1863(b)(2).  Article III(A) of the Jury Plan states that prospective jurors will be selected from voter registration lists.  As Judge Gardephe concluded in Lawrence, "[t]he exclusion of individuals who have moved from their address of registration serves the broader purpose of the JSSA.  Accordingly, the exclusion of 'inactive voters' does not violate the JSSA." 2021 WL 3500838, at *13 (collecting cases).

As to the exclusion of 3,333 potential jurors located in Putnam County, defendants' own memorandum characterizes the issue as "a technical glitch." (Def. Mem. at 17.) Defendants have not explained how the error could amount to a "substantial" violation of the JSSA, either in isolation or in combination with the exclusion of inactive voters.  See Neilly,

- 12 -

2021 WL 3913559, at *6 ("the 'clerical error' that resulted in the exclusion of voters with alternate mailing addresses in Putnam County — 'the smallest county in the Foley Square division with the fewest Black and Hispanic persons' — did not have a substantial effect on any alleged underrepresentation, and, therefore, it is also a nonactionable technical violation of the JSSA.").

Defendants' motion to dismiss the Indictment as violative of the JSSA will therefore be denied.

CONCLUSION.

The motion to dismiss the Superseding Indictment is DENIED. The Clerk is directed to terminate the motion and the related letter-motions. (Docket # 131, 134-35.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 16, 2021